UNITED STATES of America,
Plaintiff–Appellee,

v.

Jomar MICHLIN, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Rahsaan WALKER, Defendant–Appellant.

Nos. 93–10630, 93–10632.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 8, 1994.

Decided Sept. 8, 1994.

Rimantas A. Rukstele, Asst. U.S. Atty., Las Vegas, NV, for plaintiff-appellee.

Mark B. Bailus, Cherry & Bailus; Anthony P. Sgro, Las Vegas, NV, for defendants-appellants.

Before: FLETCHER, HALL and WIGGINS, Circuit Judges.

FLETCHER, Circuit Judge:

Defendants Walker and Michlin pled guilty to conspiracy, armed bank robbery, and use of a firearm during commission of a crime of violence. On appeal, they challenge the district court's denial of their motion to withdraw their guilty pleas, as well as various aspects of their sentences. We dismiss the appeals because we conclude that, pursuant to valid plea agreements, defendants waived their right to appeal.

## BACKGROUND

On October 28, 1992, a federal grand jury returned a superseding indictment, charging Michlin and Walker with conspiracy (18 U.S.C. § 371), armed bank robbery (18 U.S.C. § 2113(a) and (d)), and use of a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)). Defendants pled not guilty, but shortly before trial executed plea agreements and appeared before the court to change their pleas. Defendants then pled guilty to all three counts. Under the plea agreement, the government agreed not to seek an upward departure at sentencing, and defendants agreed not to appeal their convictions or sentences, so long as the sentences fell within the Sentencing Guidelines range as determined by the district court.

On April 7, 1993, before sentencing, defendants filed a joint pro se "Motion Questioning The Validity Of All Charges Made, Sentencing Guidelines Computation Pursuant To The Plea Agreement, And The Possibility Of Double Jeopardy." The district court struck the pro se motion on the grounds that defendants were represented by counsel, and referred the motion to defendants' attorneys. On May 3, 1993, defendants lodged a pro se "Motion To Terminate Counsel Due To Ineffectiveness, And For Lack Of Protecting Defendants' Best Interest." The district court ordered that the motion be taken up at the sentencing hearing.

At the hearing, held on May 14, 1993, the court discussed with defendants and with counsel defendants' unhappiness with their attorneys. The court invited further motions and affidavits, and on May 24, 1993, granted counsel's motion to withdraw and appointed new attorneys for defendants.

On July 30, 1993, both defendants filed motions to withdraw their guilty pleas. Walker argued that the indictment was multiplicitous, and that he had been denied effective assistance of counsel. Michlin argued that he did not enter his plea freely and voluntarily, and that he had been denied effective assistance of counsel. On August 24, 1993, the district court held an evidentiary hearing on the motions to withdraw, and, after finding that the motions lacked factual or legal basis, denied them both.

Defendants now appeal from the district court's denial of their motions to withdraw their guilty pleas. They also appeal various

aspects of their sentences under the Sentencing Guidelines.

## DISCUSSION

Before this case was heard by the present panel, the government moved to dismiss the appeals of both defendants pursuant to the waiver of appellate rights contained in the defendants' plea agreements. The waiver states as follows:

> In consideration of this plea memorandum the defendant agrees to, and hereby does, voluntarily waive his right to appeal his conviction and/or the sentence ultimately imposed by the Court, if within the guideline range as determined by the Court.

■ In *United States v. Gonzalez*, 981 F.2d 1037 (9th Cir.1992) (*Gonzalez I*), we held that a waiver of appellate rights in a plea agreement is not automatically enforceable if, on appeal, the defendant calls into question the validity of the waiver. *Id.* at 1038. We have also stated repeatedly that a waiver of appellate rights is enforceable only "if knowingly and voluntarily made." *See United States v. DeSantiago–Martinez*, 980 F.2d 582, 582 (9th Cir.1992); *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir.1991). Because Michlin argued in response to the government's motion that his appeal called into question the validity of the waiver, a motions panel of this court denied the motion to dismiss pursuant to *Gonzalez I*.

The appeal was then assigned to this merits panel. *Gonzalez I*, 981 F.2d at 1038. Our first task is to assess the validity of the plea agreement. *Id.* at n. 1; *United States v. Gonzalez*, 16 F.3d 985, 988–90 (9th Cir.1993) (*Gonzalez II*). If we conclude that the waiver is valid, we must dismiss the appeal. *De-Santiago*, 980 F.2d at 583. If we conclude that the waiver is invalid, we then reach the merits of the case. *Gonzalez II*, 16 F.3d at 990–92.

■ We set forth these procedures so that counsel will understand precisely what is before a merits panel after a motions panel has denied a motion to dismiss based on a claim of contractual waiver of appellate rights, and so that counsel may structure their briefs and focus their energies accordingly. Our review of this appeal is somewhat hampered by the parties' failure to brief separately the issue of waiver, although waiver was discussed at some length at oral argument. The issues Michlin raises (and Walker joins) with respect to the district court's denial of his motion to withdraw his guilty plea are premised on the contention that his plea was not knowing and voluntary. A knowing and voluntary waiver is a prerequisite to our enforcement of a plea agreement waiving appellate rights. *See DeSantiago*, 980 F.2d at 582; *Bolinger*, 940 F.2d at 480. We therefore consider these arguments, but emphasize that we do so only in order to determine whether the plea agreement should be enforced.

Since our review at this initial stage is confined to the question of the validity of the plea agreement, we do *not* consider Walker's argument that he should have been able to withdraw his plea because the indictment violated the Double Jeopardy Clause. If the plea agreement is valid, defendants have waived the right to raise this issue on appeal.

We review de novo the question of whether defendants have validly waived their right to appeal under the plea agreement. *Gonzalez II*, 16 F.3d at 988.

### A. *Knowing and Voluntary Nature of Plea*

Michlin complains of four infirmities in the plea negotiations and the change of plea hearing, each of which purportedly rendered his guilty plea unknowing and involuntary.

#### 1. *Failure of the court to provide notice of appellate rights*

■ Michlin argues that at the change of plea hearing the court did not advise him that he was giving up his right to appeal. The prosecutor, however, read the plea agreement in open court, and the plea agreement clearly stated that Michlin waived his right to appeal. We have held that so long as the plea agreement contains an express waiver of appellate rights, a Rule 11 colloquy concerning the waiver is not required. *De-Santiago*, 980 F.2d at 583 (9th Cir.1992).

█ Michlin also contends that his plea was infirm because his attorney did not inform him that he was waiving appellate rights. Michlin signed the plea agreement, however, which included both a waiver provision and a provision stating that he had read the plea agreement, understood its terms and conditions, and had discussed those matters with his attorney. Nothing in the record rebuts these declarations.[1] We conclude that Michlin was informed adequately regarding his waiver. *See DeSantiago,* 980 F.2d at 583.

### 2. Counsel's inaccuracies regarding sentencing range

Michlin next argues that his guilty plea cannot stand because his attorney "failed to accurately inform him of the sentencing range he was facing." Br. of Michlin at 11.

█ We have held that "an erroneous prediction by a defense attorney concerning sentencing does not entitle a defendant to challenge his guilty plea," *United States v. Garcia,* 909 F.2d 1346, 1348 (9th Cir.1990); *United States v. Turner,* 881 F.2d 684, 687 (9th Cir.), *cert. denied,* 493 U.S. 871, 110 S.Ct. 199, 107 L.Ed.2d 153 (1989), although an exception might be made in a case of "gross mischaracterization of the likely outcome," *Turner,* 881 F.2d at 687 (citing *Iaea v. Sunn,* 800 F.2d 861, 865 (9th Cir.1986)). Michlin provides no basis on which to determine whether or not his attorney grossly mischaracterized the consequences of pleading guilty, because Michlin does not specify what information his attorney gave him. Michlin has not sustained his burden to show that he did not have adequate or accurate information to enable him to plead knowingly.

### 3. Court's failure to inquire about discussions with prosecutor

Fed.R.Crim.P. 11(d) provides as follows:

The court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney.

Michlin contends that his plea was infirm because the district court did not make the inquiry called for in the second sentence of Rule 11(d). If the court had made this inquiry, Michlin argues, it would have learned that he had engaged in a proffer session with government counsel.

█ The purpose of the inquiry required by Rule 11(d) is to determine whether or not promises have been made by the government, and what those promises are. Fed. R.Crim.P. 11(d), Commentary to 1974 Amendment (" 'The plea must, of course, be voluntary and knowing and if it was induced by promises, the essence of those promises must in some way be known' ") (quoting *Santobello v. New York,* 404 U.S. 257, 261–62, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971)); *see also United States v. Gray,* 584 F.2d 96, 97 (5th Cir.1978) (Rule 11 requires an "inquiry ... into the question whether or not there had been any plea bargaining").

█ In this case, there would have been little point in the district court's inquiring whether the prosecutor had engaged in "prior discussions" with Michlin or his attorney because it was obvious that this had happened: the prosecutor read into the record a plea memorandum which Michlin stated represented the agreement he had entered into with the government. There could not have been a plea agreement if there had not been

---

1. Michlin did state in a pro se motion that he was never afforded the opportunity to read his plea agreement, and was not given a copy of the agreement until after he had changed his plea to guilty in open court. The document in which these statements were made, however, was stricken by the district court because it was filed pro se at a time when Michlin was represented by counsel. When Michlin's new attorney eventually filed a new motion to withdraw the plea, counsel did not include any similar affidavit from Michlin; counsel instead relied entirely on conclusory allegations, made in the brief, that Michlin's attorney had not informed him of the waiver of appellate rights. Nor did Michlin himself address the issue when given an opportunity to testify at the evidentiary hearing on the withdrawal motion.

"prior discussions." The purpose of the inquiry was fulfilled without the inquiry having been made: the court learned that plea negotiations had taken place.

Michlin appears to place great emphasis on the district court's obligation to inquire into "*prior* plea discussions," and suggests that the court had a duty to examine discussions entered into *prior to the execution of the plea agreement.* The commentary to Rule 11(d), however, and the facts of the case which is cited in the commentary, *Santobello,* reveal that the drafters' concern was with the disclosure of discussions entered into *prior to the guilty plea*—i.e., the plea agreement itself. *See Santobello,* 404 U.S. at 258–60, 92 S.Ct. at 496–98 (vacating sentence where plea agreement was never disclosed and as a result was never enforced).

In any event, the court did ask Michlin, in accordance with the first sentence of Rule 11(d), whether or not any threats or promises other than the plea agreement had been made to him in order to induce him to plead guilty. Michlin replied that none had. The district court's colloquy ensured that *all* promises, both those set forth in the plea agreement and any which may have preceded or exceeded the terms of the plea agreement would be disclosed. The district court was clearly in substantial compliance with Rule 11(d), *see* Fed.R.Crim.P. 11(h), and created a record from which we can easily ascertain that Michlin's waiver was knowing and voluntary.

### 4. *Letter from prosecutor regarding leniency*

Despite his sworn statement to the district court that no promises other than those set forth in the plea agreement were made to him, Michlin now contends that his attorney told him that the prosecutor would write a letter to the court recommending leniency in sentencing.

At the evidentiary hearing on defendants' withdrawal motion, the district court heard testimony on this issue. Michlin's former attorney, Donald Green, testified that he had neither received assurances from the prosecutor that leniency would be recommended, nor told Michlin that the prosecutor had made any such promises. Green also speculated that Michlin might have mistaken a *"Kastigar* letter" (in which Michlin agreed that the government could make derivative use of information he provided in his proffer, thereby avoiding the necessity for a hearing under *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)), for a letter recommending leniency.

Michlin also testified at the hearing on the withdrawal motion, and himself diminished the importance of the letter ("Basically the letter and all that, you know, it's really not of much interest to me"), stressing instead his purported belief at the time of the guilty plea that he was not pleading to a separate § 924(c) count.

On this record, we once again conclude that Michlin has failed to show that his plea was not knowing and voluntary.

### B. *Ineffective Assistance of Counsel*

In addition to their direct contention that their pleas were not knowing and voluntary, both defendants argue that counsel was ineffective. Although it may be an overly generous construction, we assume that in making this argument, defendants mean to attack the validity of their pleas by attempting to demonstrate that counsel was so deficient in advising them of the nature of the case against them and the consequences of pleading guilty that they were deprived of information necessary to render their pleas truly "knowing."

We reject this argument. As discussed above, Michlin has not shown that counsel grossly mischaracterized the consequences of pleading guilty, or misled him in any other way. Neither has Walker shown that counsel failed to inform him of the weakness of the charges against him by neglecting to advise him of the purported infirmity of the indictment under the Double Jeopardy Clause. There is simply no merit to Walker's contention that the indictment violated the Double Jeopardy Clause by charging him both with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d), and with carrying a firearm during the commission of a crime of violence in violation of § 924(c). We have repeatedly rejected precisely this argu-

ment. *United States v. Cannizzaro*, 871 F.2d 809, 810 (9th Cir.) (court does not violate Double Jeopardy Clause by imposing consecutive sentences under 18 U.S.C. § 2113(a) and (d) and 18 U.S.C. § 924(c)), *cert. denied*, 493 U.S. 895, 110 S.Ct. 245, 107 L.Ed.2d 195 (1989); *United States v. Browne*, 829 F.2d 760, 767 (9th Cir.1987) (same), *cert. denied*, 485 U.S. 991, 108 S.Ct. 1298, 99 L.Ed.2d 508 (1988); *United States v. Blocker*, 802 F.2d 1102, 1105 (9th Cir.1986) (same). Counsel's failure to advise Walker of frivolous arguments does not render Walker's guilty plea anything less than knowing and voluntary.

C. *Sentencing Issues*

Defendants appeal from their sentences on four bases, and the parties have devoted considerable space in their briefs to these sentencing issues. Because we conclude that defendants' plea agreements are valid, defendants have waived these issues.

We reject defendants' argument that under the language of the plea agreements they did not waive their right to appeal *incorrect* applications of the Sentencing Guidelines. Defendants' construction of the plea agreement would render the waiver meaningless. We dismiss the appeals in their entirety.

**APPEALS DISMISSED.**